**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ONDRAONTAE WYRE**

|  |  |
|---|---|
| **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.:** |
| **BOLLINGER SHIPYARDS, INC.** | **SECTION:** |
| **Defendants** | **MAGISTRATE:** |

---

**COMPLAINT FOR DAMAGES**

---

NOW INTO COURT, through undersigned counsel, comes plaintiff, ONDRAONTAE WYRE, who makes the following allegations and claims against defendant BOLLINGER SHIPYARDS, INC.:

**JURISDICTION**

1.  This Honorable Court has jurisdiction under 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq*.; and under Louisiana substantive law, including, but not limited to, the Louisiana Employment Discrimination Law, La.Rev.Stat.Ann. 23:301, *et seq*.  As a result, jurisdiction for the federal claims is invoked pursuant to 28 U.S.C. §1331, as there are stated claims which arise under the laws of the United States.  There is also supplemental jurisdiction over plaintiff's State law claims pursuant to 28 U.S.C. §1367.

**VENUE**

2.      This action properly lies in the Eastern District of Louisiana pursuant to 28 U.S.C.

§1391(b), as the claims asserted herein arose in this district.


**PARTIES**

3.      Plaintiff, Ondraontae Wyre ("Wyre") is a citizen of the State of Louisiana.  She was

employed by Bollinger Shipyards, Inc. beginning on October 23, 2013.

4.      Defendant, Bollinger Shipyards, Inc., ("Bollinger") is corporate body organized

under and pursuant to the laws of the State of Louisiana and with its principal place

of business and corporate headquarters in Lockport, Louisiana, at all times material

hereto  authorized  to  do  business  and/or  actually  doing  business  within  the

jurisdiction of this Honorable Court.


**BACKGROUND FACTS**

5.      Ondraontae Wyre is an African American woman.

6.      Ms.  Wyre  was  first  offered  employment  with  defendant  Bollinger  on  or  about

October 23, 2013 as part of an apprenticeship and training program.  Her immediate

supervisor for the program was Emmet Boudreaux, a certified welding inspector

and welding educator employed by Bollinger.

7.      Pursuant to this program, Ms. Wyre would attend classes to learn how to weld and

also work at Bollinger in various capacities: as a welder, in the safety office, and

otherwise around the shipyard.

8.      Ms. Wyre was brought on as part of a small "class" of apprentice welders, which,

upon information and belief, Bollinger hires on a schedule parallel to the schedule of trade classes at Louisiana Technical College.

9.   In October, 2013, Ms. Wyre requested to be provided with personal protective equipment for her welding work and classes in welding, including welding sleeves and a welding bib. Ms Wyre was told that Bollinger may not have sleeves and a bib that would fit her, because of her breasts and that the welding sleeves and bibs Bollinger had on hand were made for men.

10.  Upon information and belief, all of the men working as welding apprentices were issued welding sleeves and bibs.

11.  Despite repeated requests over the course of months, including to supervisor Emmet Boudreaux, Ms. Wyre was never issued welding sleeves or a bib by Bollinger; one of Ms. Wyre's welding instructors lent her an old, used set of sleeves, and she worked without a bib, which is necessary protective equipment. To Ms. Wyre's knowledge, she is the only apprentice not issued protective equipment.

12.  While working in the safety office, Ms. Wyre's direct supervisor was Louis Guidry, a white male.

13.  On or about November 27, 2013, Ms. Wyre was doing filing work in the safety office at Bollinger, as part of her work duties. She attempted to change the station on the radio, which was located above her head on a shelf. While she was reaching, her supervisor Louis Guidry came up behind her and lifted her up by her thighs, placing his head on her posterior.

14.  Ms. Wyre protested, and Mr. Guidry apologized, calling her "my sweet baby." He asked for her forgiveness.

3

15. Ms. Wyre told Mr. Guidry she forgave him, and requested that he not "get out of hand" with her again.

16. When Ms. Wyre reported the incident in Paragraphs 13-16 to Human Resources, the HR employees/supervisors heard Ms. Wyre's story and laughed. They did not recommend a further course of action or indicate to Ms. Wyre that they would investigate her claims.

17. Following that exchange, Mr. Guidry began to ask Ms. Wyre about the man she was dating. He stated that he – Mr. Guidry – would like to be in "that man's shoes." Mr. Guidry suggested that he could give Ms. Wyre money, and that his wife would never find out if she "didn't say nothing." He explained that he was aware that Ms. Wyre was a single mother, and that he knew she needed the money from her job with Bollinger in order to support her child. Ms. Wyre refused to accept money from Mr. Guidry and went into the restroom to get away from him.

18. On or about December 3, 2013, as a result of Bollinger's failure to issue Ms. Wyre a welding bib, Ms. Wyre received serious burns on her breasts and chest while performing an overhead weld.

19. As a result of this injury, Ms. Wyre has suffered heavy scarring on her breasts, pain and disfigurement, and was unable to care for her child as usual during the early stages of the healing process.

20. Ms. Wyre continues to experience discomfort and embarrassment/humiliation from the scars on her breasts and chest.

21. Nicole Stanley and Peter LeBoeuf are Human Resources supervisors at Bollinger. Donelle Cunningham is a Safety representative, and Jared Plaisance is a Safety

coordinator.

22.   On December 10, 2013, Ms. Wyre went to the safety office to request a clean bandage to put on after she put ointment on her healing burns.  Mr. Guidry insisted that he be allowed to help her put the bandage and ointment on.

23.   After the bandage and ointment were on and Ms. Wyre had put her clothing back on, Mr. Guidry placed his hand over Ms. Wyre's right breast and nipple and rubbed them through her shirt.  Ms. Wyre told him to stop and walked away.  Mr. Guidry apologized.

24.   On another date uncertain, Mr. Guidry pressed his pelvis against Ms. Wyre's posterior, causing her to protest and walk away.  He apologized for this.

25.   On the date Ms. Wyre received her recruiting bonus check, she returned to the safety office for work after getting it.  She was happy and gave another female employee a hug.  Mr. Guidry demanded "give me a hug" and grabbed her tightly. He then began to kiss Ms. Wyre.  Ms. Wyre pushed his head back and told him to stop.  He did not.  She then told him again to stop and pushed his body away from her.  She then went to Donelle Cunningham and reported the incident.

26.   In January, 2014, Mr. Guidry asked Ms. Wyre if they could speak privately.  She refused and walked away to another office.  Mr. Guidry followed her and told her that he didn't want her to "tell on" how he behaves at work.

27.   All of the above-mentioned incidents were reported to Human Resources at Bollinger.  Ms. Wyre had repeated contacts throughout November, December, and January with Bollinger employees Donelle Cunningham, Nicole Stanley, Peter LeBoeuf and Jared Plaisance about Mr. Guidry's behavior.

28.  Despite her repeated discussions with Human Resources, Ms. Wyre is unaware of any disciplinary action taken against Mr. Guidry, and she was still required by Bollinger to work with Mr. Guidry as her direct supervisor on a regular basis.

29.  Ms. Wyre repeatedly spent periods of time during her assignments to the safety office locked in the bathroom crying.

30.  Ms. Wyre had difficulty in her studies in the apprenticeship program and with her work at Bollinger with the apprenticeship program after Mr. Guidry's sexual advances began, and they worsened when she realized that the Human Resources department would not help her.

31.  On March 14, 2014, Ms. Wyre was again assigned to work with Louis Guidry – this time also with Andre Eusea, a white male fellow apprentice, and Donelle Cunningham.

32.  Ms. Wyre was sent to get food for the other employees.  Upon her return, two other supervisors, "Matt" and "Junior" were in the room. Ms. Cunningham, a white woman, referred to Ms. Wyre as a slave.  Matt asked Ms. Wyre if she was okay, and then left the room without eating. Junior also left.

33.  Ms. Wyre told the room that she would no longer tolerate this treatment, and left.

34.  Ms. Wyre never returned to her position at Bollinger.

35.  Upon information and belief, no investigation was opened with respect to Ms. Wyre being referred to as a slave, nor was any action taken against any employee as a result.

36.  On or about May 7, 2014, Ms. Wyre filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and discrimination

and racial discrimination.

37. On May 8, 2014, Direct Keith Hill of the EEOC issued Ms. Wyre a Notice of Right to Sue on the charges of sexual harassment and discrimination and racial discrimination, informing Ms. Wyre that it was unlikely that the EEOC would be able to complete its administrative processing of the claim within 180 days.

## UNLAWFUL DISCRIMINATION

38. Each and every one of the previous allegations of the Complaint are restated in their entirety and incorporated by reference herein.

39. Defendant's refusal to issue proper protective equipment to Ms. Wyre when male employees were issued said equipment, including if that refusal was based on her gender-specific characteristics, despite Ms. Wyre's repeated requests for that equipment, constitutes discrimination based on sex, and violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq* and the Louisiana Employment Discrimination Law, La.Rev.Stat.Ann. 23:301 *et seq.*

40. Defendant's supervisor Louis Guidry's treatment of Ms. Wyre constitutes repeated sexual harassment and fostering and/or creation of a hostile work environment and therefore discrimination based on sex, and violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq* and the Louisiana Employment Discrimination Law, La.Rev.Stat.Ann. 23:301 *et seq.*

41. Defendant's Human Resources Department's failure to address Mr. Guidry's treatment of Ms. Wyre, a direct subordinate, and its response to her complaint (including but not limited to laughter and refusal to investigate or issue disciplinary action on the matter) constitute fostering and/or creation of a hostile work

environment and discrimination based on race and/or sex, and violate 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq*; and the Louisiana Employment Discrimination Law, La.Rev.Stat.Ann. 23:301 *et seq.*

42.    Defendant's supervisory employee's referral to Ms. Wyre as a slave and/or defendant's failure to take action against that employee constitutes discrimination based on race and/or sex, and violates 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq*; and the Louisiana Employment Discrimination Law, La.Rev.Stat.Ann. 23:301 *et seq.*

## DAMAGES

43.    As a result of the foregoing, Defendant Bollinger Shipyards, Inc. is indebted unto Ms. Wyre for all damages, both general and special, to which she may be entitled as a matter of law for each violation of law, including but not limited to physical injury, disfigurement, and related medical expenses, emotional distress, mental anguish, loss of reputation, embarrassment, humiliation, and loss of past and future earnings, earning capacity, and benefits.

44.    Ms. Wyre is further entitled to attorney's fees and punitive damages as authorized by law, plus all costs of these proceedings and prejudgment and post-judgment legal interest recoverable as a matter of law.

WHEREFORE, plaintiff Ondraontae Wyre prays that this Complaint be filed and served upon the defendant Bollinger Shipyards, Inc., and after all due proceedings are had herein that there be judgment in favor of plaintiff Ondraontae Wyre and against defendant Bollinger Shipyards, Inc. for all special and general damages which are just and due in

the premises and which are available as a matter of law, including, but not limited to, damages for physical injury, disfigurement, and related medical expenses, emotional distress, mental anguish, loss of reputation, embarrassment, humiliation, loss of past and future earnings, earning capacity, and benefits, attorney's fees, punitive damages, and legal interest.

RESPECTFULLY SUBMITTED,

**Lestelle & Lestelle, APLC**

**Terrence J. Lestelle – 8540**
**Andrea S. Lestelle – 8539**
**Richard M. Morgain – 32603**
3421 N. Causeway Blvd., Suite 602
Metairie, LA 70002
Telephone: (504) 828-1224
Facsimile: (504) 828-1229
Attorneys for Ondraontae Wyre

**Service Information**:
**Bollinger Shipyards, Inc.**
Through its registered agent for service of process
L. Clifton Dickerson, III
1402 Mar Dr.
Lockport, LA 70374