UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ONDRAONTAE WYRE | CIVIL ACTION |
| VERSUS | NUMBER: 14-1759 |
| BOLLINGER SHIPYARDS, INC. | SECTION: "B"(5) |

### ORDER AND REASONS

Before the Court is the Rule 12(b)(6) Motion for Partial Dismissal filed by Defendant, Bollinger Shipyards, Inc. ("Bollinger"). (Rec. doc. 8). That motion is opposed by Plaintiff, Ondraontae Wyre ("Wyre"). (Rec. doc. 13). A Reply Memorandum was filed by Bollinger (rec. doc. 16) and the Court heard oral argument on the Motion on December 3, 2014. (Rec. doc. 17).

**I.   BACKGROUND**

Wyre is an African-American, female former employee of Bollinger. She was employed with Bollinger as a welding apprentice from approximately October 23, 2013, until her voluntary resignation in March of 2014. (Rec. doc. 1, ¶¶ 6-8, 34).

In her Complaint, Wyre alleges that in October 2013 she "requested to be provided with personal protective equipment ("PPE") for her welding work and classes in welding, including welding sleeves and a welding bib," but that she was told "that Bollinger may not have sleeves and a bib that would fit her, because of her breasts and that the welding sleeves and bibs Bollinger had on hand were made for men." (Rec. doc. 1, ¶ 9). Wyre alleges that she was denied this PPE despite the fact that male welding apprentices routinely received welding sleeves and bibs. (Rec. doc. 1, ¶¶ 10-11). She claims that

Bollinger's alleged failure to provide her PPE constitutes gender discrimination in violation of Title VII and Section 1981.  (Rec. doc. 1, ¶ 39).  Plaintiff also alleges she was subjected to unlawful sexual harassment by safety representative, Louis Guidry, and that on one occasion, another employee, who is a white female, "referred to [Plaintiff] as a slave." (Rec. doc. 1, ¶¶ 12-17, 22-26, 32).  Wyre states in her Complaint that following this statement, she immediately left the room and "never returned to her position at Bollinger."  (Rec. doc. 1, ¶ 34).

The claims that are subject of this Motion are said to arise under 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and include:  (1) a claim that Bollinger "discriminatorily failed to issue necessary protective equipment to the plaintiff, which it paid for and provided to her male counterparts"; (2) an apparent claim that Bollinger declined to investigate the aforementioned conduct by Mr. Guidry because of Wyre's race and; (3) a claim centered on the supervisor's comment referring to Wyre as a "slave" and Bollinger's failure to investigate that transgression.  (Rec. doc. 1 at pp. 7-8).[1]

In seeking dismissal of these claims, Bollinger advances a number of arguments.  First, it argues that the failure to issue PPE is not an "ultimate employment decision" of the type required to maintain a Title VII claim under applicable Fifth Circuit precedent.  *See, e.g.*, *Preston v. Tex. Dep't of Family & Prot. Servs.*, 222 Fed.Appx. 353, 358 n.18 (5th Cir. 2007)(quoting *Dollis v. Rubin*, 77 F.3d 777, 781–822 (5th Cir. 1995)(per curiam)); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)).  Second, it argues that Wyre failed to plead any factual basis to support her conclusory allegation that Bollinger failed to investigate Guidry's harassing behavior because of Wyre's race.  Finally, Bollinger argues

---

[1]  Wyre's claim for sexual harassment arising from the alleged conduct of Guidry is not a subject of this motion.

that the single alleged comment directed at Wyre in which a supervisor called her a "slave" was not "severe or pervasive enough to create an objectively hostile or abusive work environment." (Rec. doc. 16 at p. 4).

Opposing Bollinger's efforts to have the aforementioned claims dismissed, Wyre argues first that Bollinger's refusal to provide her with PPE constitutes an "adverse employment action" of a type sufficient to sustain a claim under Title VII for the following reasons:

- Because Bollinger was required under regulations of the federal Occupational Safety and Health Administration ("OSHA") to provide Wyre the subject PPE and its failure to do so "materially breached [Bollinger's] obligation to Wyre." (Rec. doc. 13 at p. 5).

- Because the subject protective equipment was a "tangible benefit" which amounted to "compensation in the form of fringe benefits" and it was withheld from her on the basis of her gender. (*Id.* at p. 6).

- Because the withholding of the subject protective equipment altered Wyre's work conditions and therefore her job duties, placing her in an objectively worse position or situation and in a significantly more dangerous job. (*Id.* at p. 7).

- Because the failure to provide necessary protective equipment produces a "material employment disadvantage," citing Eighth Circuit precedent. (*Id.* at p. 9).

As for Bollinger's efforts to have the Court dismiss the claim for racial discrimination, Wyre argues that Bollinger's failure to take action against Guidry for his alleged sexual harassment of Wyre evidences Bollinger's "racial motivation" in failing to investigate Wyre's "repeated complaints against [Guidry.]" (*Id.* at p. 11). Finally, Wyre

3

appears to argue that because Bollinger created or allowed a "culture" to exist in which a white supervisor was "entitled" to refer to her as a slave, her racial discrimination claim based on that isolated comment rises to the level necessary to state a claim for such discrimination under Fifth Circuit precedent.

**II.     ANALYSIS**

   *A. Applicable Law*

To survive a motion to dismiss under Rule 12, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). However, the complaint must allege enough facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.

While the court must accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff, it need not accept the plaintiff's legal conclusions as true. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502-03 (5th Cir. 2014)(citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. §2000e–2(a)(1). To establish a discrimination claim under Title VII or

4

§1981, a plaintiff must prove that he or she was subject to an "adverse employment action"—a judicially-coined term referring to an employment decision that affects the terms and conditions of employment. *See, e.g., Stone v. Louisiana Dept. of Revenue*, __ Fed.Appx. __, 2014 WL 5654307 at *6 (5th Cir. 2014); *Thompson*, 764 F.3d at 503; *Pegram*, 361 F.3d at 281–82.

The Fifth Circuit applies a "strict interpretation" in defining the term, "adverse employment action." *Pegram*, 361 F.3d at 282. "Under Title VII principles, which inform our treatment of section 1981 claims, an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* (quoting *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.) *cert. denied sub nom.* 540 U.S. 817, 124 S.Ct. 82 (2003)). "Rather, an adverse employment action consists of 'ultimate employment decisions' such as hiring, granting leave, discharging, promoting, and compensating." *Id.* (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002), *overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006)).

    B. *Wyre's Gender Discrimination Claim*

Bollinger moves for the dismissal of Wyre's gender discrimination claim, which is based on Bollinger's alleged refusal to provide Wyre with certain personal protective equipment. In brief, Wyre makes multiple arguments as to why this alleged conduct rises to the level of an adverse employment action under Fifth Circuit precedent, but even a liberal reading of the Complaint fails to reveal factual allegations sufficient to support this claim.

For instance, while Bollinger's failure to provide this equipment may in fact violate OSHA regulations, Wyre cites no authority to support the notion that such a violation of a safety regulation, in and of itself, is actionable under Title VII or Section 1981. A regulatory violation such as this may, as Wyre suggests in brief, "breach [an] obligation to the Plaintiff" and such a breach may give rise to some form of claim or cause of action, but it does not give rise to an employment discrimination claim under either Title VII or Section 1981, particularly in the absence of any factual allegations to that effect in the Complaint. Likewise, this Court cannot credit Wyre's arguments referencing the Federal Income Tax Code (26 U.S.C. §§132(d), 162) or the Equal Pay Act (29 U.S.C. §206(d)) to argue that the "tools and equipment" that Bollinger failed to provide her should be considered compensation in the form of fringe benefits, particularly given that she failed to allege either: (1) that the withheld protective equipment was a form of compensation, or (2) that either of these federal statutes applied to her case.

Wyre relies heavily on an Eighth Circuit decision that held that the failure to provide protective equipment to female firefighters amounted to a "material employment disadvantage" and therefore properly formed the basis of a Title VII claim for gender discrimination. *See Wedow v. City of Kansas City*, 442 F.3d 661 (8th Cir. 2006). Wyre is correct that the *Wedow* Court found that circumstances similar to those present in this case were sufficient to state a claim for gender discrimination under Title VII, but she fails to account for an important fact that ultimately renders that decision unpersuasive here – the Eighth Circuit applies a different legal standard in analyzing whether particular conduct meets the "adverse employment action" test.

The Eighth Circuit defines "adverse employment action" as a "tangible change in working conditions that produces a material employment disadvantage." *Id.* at 671 (quoting *Sallis v. Univ. of Minn.,* 408 F.3d 470, 476 (8th Cir. 2005)).  This is compared to the Fifth Circuit's definition:  an adverse employment action consists of "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating.  *Thompson,* 764 F.3d at 503;  *Pegram*, 361 F.3d at 282.  In short, the Fifth Circuit's standard is more stringent than that employed in the Eighth Circuit, a fact that even Wyre acknowledges in brief.[2]

Constrained as this Court is to apply the "ultimate employment decision" rule as dictated by the Fifth Circuit, the Court finds that the conduct complained of by Wyre, *i.e.*, Bollinger's failure to provide protective equipment on the basis of Wyre's gender, is not an "ultimate employment decision" and therefore is not actionable under Title VII or Section 1981.

C.  *Wyre's Racial Discrimination Claim*

Wyre claims that she has pleaded two separate charges of racial discrimination.  The first is based upon the comment directed at her on her last day of work by a white female supervisor referring to her as a "slave."  The second, much harder to divine from reading the Complaint, is her allegation that Bollinger's failure to investigate or address Guidry's alleged sexual harassment was somehow motivated by her race.  (Rec. doc. 13 at p. 11).

---

[2]  In a footnote, Wyre correctly observes that Judge Dennis, in a concurring opinion in *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 (5th Cir.), *cert. denied,* 540 U.S. 817, 124 S.Ct. 82 (2003), observed that "the only other circuit that purports to follow the 'ultimate employment decision' rule of the Fifth Circuit is the Eighth Circuit," but that it does so in a "more permissive" fashion.  (Rec. doc. 13 at p. 9 n. 5).  Indeed, in the very language quoted by Wyre in brief, the *Wedow* Court found that because a lack of PPE "affected" the "terms and conditions of a female firefighter's employment," the jury was entitled to find a violation of Title VII.  The *Wedow* Court clearly applied a more "permissive" standard to the facts of that case than would the Fifth Circuit.

After a close review of the Complaint and Wyre's arguments concerning these allegations, the Court is convinced these particular claims should be dismissed.

The plaintiff in a Title VII hostile work environment claim must establish that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir.), *cert. denied sub nom.* __ U.S. __, 133 S.Ct. 136 (2012). "'For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be 'sufficiently **severe or pervasive** to alter the conditions of the victim's employment and create an abusive working environment.'" *Fortenberry v. Texas*, 75 Fed.Appx. 924, 928 (5th Cir. 2003), *cert. denied*, 540 U.S. 1152, 124 S.Ct. 1152 (2004)(quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993))(emphasis added). The "severe or pervasive" standard is intended to filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2284 (1998)(citation omitted).

A single incident involving a co-worker's use of racial language does not rise to the level of "severe or pervasive harassment" for which Title VII or Section 1981 provide relief. *Brooks v. Firestone Polymers, LLC*, __ F.Supp. 3d __, 2014 WL 5088657 at *29 (E.D. Tex. Oct. 8, 2014) (citing *Frazier v. Sabine River Auth. State of La.*, 509 Fed.Appx. 370, 374 (5th Cir.), *cert. denied*, __ U.S. __, 134 S.Ct. 727 (2013)). Judge Fallon of this District explained when

faced with comparable allegations that a "single [] incident [of harassment], even compounded with the allegations falling within the Title VII time period, and even 'illuminated' by Plaintiff's stale allegations of prior racially-charged language, as a matter of law does not arise to the level of conduct 'severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive.'" *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 494 (M.D. La. 2012)(Fallon, J.)(quoting *Harris*, 510 U.S. at 21, 114 S.Ct. at 370).

Multiple courts in the Fifth Circuit have dismissed harassment claims under Rule 12(b)(6) where the only perceived harassing conduct alleged in the complaint was a single incident or offensive remark. *See, e.g., Wilson-Robinson v. Our Lady of the Lake Regional Medical Center, Inc.*, No. 10-CV-0584, 2011 WL 6046984 at *3 (M.D. La. Dec. 6, 2011)("[t]he solitary, isolated utterance of a single racial slur, standing alone, is not sufficiently severe or pervasive to create Title VII liability . . .."); *Fisher v. Dallas Cnty.*, No. 12-CV-3604, 2014 WL 4797006 at *5 (N.D. Tex. Sept. 26, 2014)(granting Rule 12(b)(6) motion to dismiss because "a single instance of a racial slur [] is insufficient to allege a plausible claim" of racial harassment); *Melson v. Chetofield*, No. 08-CV-3683, 2009 WL 537457 at *5 (E.D. La. March 4, 2009)(Vance, J.)(dismissing disability harassment claim under Rule 12(b)(6) because the single insult alleged by plaintiff "was the disability equivalent of a racial epithet or slur, and this is not enough to state a claim.").

Here, Wyre has alleged as the basis of her racial discrimination claim a single comment allegedly directed at her by a white, female supervisor. Even if that isolated comment rises to the level of an "epithet," it is very clearly insufficient to state claim for racial discrimination under the well-established precedent cited above.

Wyre levels an additional charge of racial discrimination in her Complaint, claiming that Bollinger's failure to investigate or address Guidry's alleged harassing conduct and its failure to investigate or act upon the "slave" comment constitute "discrimination based on race and/or sex." (Rec. doc. 1 at ¶¶ 41, 42) (emphasis added). This "and/or" language is the only verbiage in the entire Complaint whereby Wyre attempts to link Bollinger's failure to investigate or take action to her race. There are no factual allegations to support these conclusory statements alleging that Bollinger was motivated by race to ignore the alleged statements and actions of its supervisors against Wyre.

In attempting to illuminate (or possibly expand upon) these bare allegations in her Opposition Memorandum here, Wyre states:

> The creation of a culture in which white supervisors are entitled to refer to Ms. Wyre as a "slave" in the presence of the man she had repeatedly accused of sexually harassing her provides further legitimacy to her complaint for racial discrimination and plaintiff's legitimate belief that Bollinger's refusal to investigate these claims is related not only to her gender, but also to her race.

(Rec. doc. 13 at p. 11)(footnote omitted).

This explanation concerning Wyre's "legitimate belief" that she was discriminated against in not enough to remedy the underlying problem that there are no facts pleaded in the Complaint to support the notion that anything Bollinger did or did not do was motivated by Wyre's race. She has stated conclusions without any supporting facts, attempting to state a claim that simply will not pass muster in this Circuit. *See Thompson*, 764 F.3d at 502-03 (in ruling on a motion to dismiss under Rule 12(b)(6), the court "need

10

not . . . accept the plaintiff's legal conclusions as true.")(citing *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. at 1949-50).[3]

### III.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Bollinger's Rule 12(b)(6) Motion for Partial Dismissal and hereby **DISMISSES WITH PREJUDICE** Plaintiff's claims in this matter for gender and racial discrimination.  This Order of dismissal does not affect Plaintiff's remaining claims for sexual harassment.

New Orleans, Louisiana, this  14th  day of           January           , 2015.

```
                                          _____
                                              MICHAEL B. NORTH
                                          UNITED STATES MAGISTRATE JUDGE
```

---

[3] Notably, Wyre has also confirmed that, upon further investigation, she "has nothing further to add to these allegations." (Rec. doc. 13 at pp. 11-12).